UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELEVEN 10, LLC, | ) |
|     *Plaintiff,* | ) Case No. 22-cv-2447 |
| v. | ) |
| THE PARTNERSHIPS AND. UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | ) |
|     *Defendants.* | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ELECTRONIC SERVICE OF PROCESS AND EXPEDITED DISCOVERY**

I. **Introduction and Background**[1]

Plaintiff Eleven 10, LLC created a very unique hard-shell tourniquet case (the "Eleven 10 Case") used by military, law enforcement, first responders and other medical service providers. The Eleven 10 Case exhibits a very distinctive appearance and trade dress. As the success and market recognition for Eleven 10's case has grown, counterfeiters have knocked-off the Eleven 10 Case, undercut Eleven 10's pricing, and then sold the counterfeit goods on Amazon.com and other e-commerce sites.

Defendants are Chinese importers, who sell counterfeit versions of the Eleven 10 Case under pseudonyms on Amazon.com. Defendants have only a virtual presence on Amazon, and they have concealed their whereabouts, business affiliations, and true identity to avoid service, to avoid liability, and to continue their infringing counterfeit sales. To the extent

---

[1] This introduction is supported by the allegations in the Complaint (Doc. No. 1).

{10336740:2 }

defendants provide any physical address on Amazon, investigations have shown the addresses are not valid or appear not to be the seller's real address.

To end this harmful trade dress infringement, Eleven 10 respectfully asks this Court to grant it leave to serve these defendants by email and/or electronic publication by: (1) for those defendants with a known email address, serving such defendant with a copy of the summons and complaint by email, or (2) for those defendants with unknown email addresses and who can only be communicated with through an Amazon.com messaging service, using that messaging service to provide notice of this lawsuit and to provide instructions for downloading the summons and complaint from a website.

Furthermore, Eleven 10 asks this Court also allow for expedited discovery to allow Eleven 10 to obtain further contact information from Amazon.com by subpoena, which information Amazon.com will not voluntarily provide. This will provide the opportunity for additional means for service if the electronic service sought by this motion is unsuccessful.

II. **Law and Argument**

    A. **The Court should grant leave to allow service by email or electronic messaging.**

        1. **The law allows electronic service for online sellers.**

Fed. Civ. R. 4(f)(3) empowers this Court to allow service of process by any means not prohibited by international agreement as the Court directs. *See e.g. Chrome Cherry Ltd. v. Partnerships and Unincorporated Associations Identified on Sched. "A",* 21-CV-05491, 2021 WL 6752296, at *2 (N.D. Ill. Oct. 20, 2021) (relying on *Gianni Versace, S.P.A. v. Yong Peng,* Dkt. No. 70, No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019) (unpublished) (attached hereto as Exhibit 1) (*citing Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1014 (9th Cir. 2002)). The United

States Court of Appeals for the Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because (as here) the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

United States District Courts, including Courts in this District, routinely permit alternative service of process by email or electronic messaging, for service in countries, like China, that are signatories to the Hague Convention. *NBA Properties, Inc. v. Partnerships and Unincorporated Associations Identified in Sched. "A"*, 549 F. Supp. 3d 790, 795 (N.D. Ill. 2021). The Hague Convention does not preclude service by e-mail, and the declarations to the Hague Convention filed by China do not prohibit e-mail service. *See, e.g., MacLean–Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 WL 5100414, at *2 (N.D. Ill. Dec. 1, 2008) ("The Hague Convention does not prohibit service by e-mail or facsimile."); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331 (S.D.N.Y. 2015) (same); *Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 WL 2633317, at *3 (N.D. Ill. June 25, 2021) (same); *see also Commodity Futures Trading Comm'n v. Caniff*, No. 19-cv-02935, 2020 WL 956302, at *6 (N.D. Ill. Feb. 27, 2020) ("The Convention does not affirmatively authorize, nor does it prohibit, service by email"); *see also Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 261 (S.D. Ohio 2013) ("[v]arious courts have agreed that service by email is not prohibited by the Hague Convention").

A plaintiff is not required to attempt to serve a business or individual in China under the Hague Convention before seeking leave to serve by electronic messaging. *See Hangzhou*

*Chic Intelligent Tech. Co. v. P'ship and Unincorp. Assocs.*, No. 20-cv-4806, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021) (noting that "the Federal Rules of Civil Procedure d[o] not require Plaintiffs to attempt Hague Convention service prior to seeking alternative service pursuant to Rule 4(f)(3)," and that email service does not violate the Hague Convention or Chinese law).

Likewise, Courts have confirmed that the Hague Convention does not displace Rule 4(f)(3). *See Gianni Versace, S.P.A. v. Yong Peng, et al.*, No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019)(*See* Ex. A) (*citing Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494 (5th Cir. 2018)) ("Overlooking Rule 4(f)(3) entirely, Gotech argues that the service did not comply with the Hague Convention and Rule 4(f)(1). This argument misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3).")). Service attempts under the Hague Convention are not required as a prerequisite because it takes over one year to learn whether service under the Hague Convention in China was even successful. (*See* Cavanagh Decl. at ¶ 5). In cases involving trade dress infringement, that is too long to wait to stop the infringement and associated irreparable harm to goodwill and reputation.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props.* 284 F.3d at 1014-15 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other

limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.*

The plain language of Rule 4 requires only that service be made as directed by the court and not prohibited by international agreement. *In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also, Strabala v. Zhang,* 318 F.R.D. 81, 114 (N.D. Ill. 2016) (authorizing alternative service pursuant to Fed. R. Civ. P. 4(f)(3)); *Sulzer Mixpac AG v. Medenstar Indus. Co.,* 312 F.R.D. 329, 331-32 (S.D.N.Y. 2015) (same); *In re LDK Solar Securities Litigation,* C 07-05182 WHA, 2008 WL 2415186, at *11 (N.D. Cal. June 12, 2008); *Levi Strauss & Co., v. Zhejiang Weidu Garment Co., Ltd. et al.,* No. 16-cv-7824 (N.D. Ill. Nov. 17, 2016) (unpublished) (same).

As such, this Court may allow Plaintiffs to serve the Defendants via electronic publication and e-mail.

### 2. Electronic service is appropriate here.

Electronic service is appropriate and necessary in this case because the Defendants and their offshore online stores operate via Amazon.com and, on information and belief: (1) provide false names and/or false physical address information to conceal their locations and avoid liability for their unlawful conduct; and (2) rely entirely on electronic communications to communicate with their customers and third party service providers. (*See* Cavanagh Decl. ¶¶ 3-7.). The latter point demonstrates that electronic messaging is the best and preferred means by which to provide notice, and, in fact, are likely the only means based on

defendants having only an online/virtual presence and concealing its real-life contact information. (*See* Cavanagh Decl. ¶¶ 3-4.) Authorizing service of process via e-mail and electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to protect its rights in a timely manner.

Finally, in the event there are addresses on the Amazon seller accounts of the Defendants identified in Schedule A, that not require service first be attempted there in the case of such products being counterfeits. *See Hangzhou*, 2018 WL 1222783, at *3 (allegations that defendants sell counterfeit products online and are located outside the United States justify email service, notwithstanding that defendants' physical addresses may have been available online). That being said, it does appear from an initial investigation these addresses are not even real, and service via means other than electronic would not be likely to even reach the Defendants. (*See* Cavanagh Decl. ¶ 6.) Making matters worse, Eleven 10 would have to wait over a year to learn from the Chinese Central Authority whether service was perfected or not. (*See* Id. ¶ 5) Fed. Civ. R. 4(f) was designed to avoid such unnecessary and impractical delays.

Therefore, Eleven 10 asks the Court to allow it to serve Defendants with known addresses by email and, for those Defendants with unknown addresses, to provide notice of this case through Amazon's seller messaging system and to provide instructions as to where they can obtain copies of the summons and complaint from a website, such as dropbox.com, where Eleven 10 will publish those materials.

B. **The Court should allow Eleven 10 to obtain expedited discovery from Amazon**

Under Fed. Civ. R. 26(d)(1), discovery cannot begin until there has been a Rule 26(f) planning conference between the parties, except in certain circumstances, including by court order. Courts evaluate a motion for expedited discovery 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'" *Ibarra v. City of Chicago*, 816 F.Supp.2d 541, 554 (N.D. Ill.2011) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill.2000)). In order to obtain discovery needed to perfect service on party, therefore, expedited discovery must be ordered because the unidentified parties cannot appear to participate in the Rule 26(f) conference if Eleven 10 does not have their identity.

Courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b); *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. at 623 (N.D. Ill.2000); *see also Lamar v. Hammel*, No. 08–cv–02–MJR–CJP, 2008 WL 370697 (S.D.Ill. Feb.11, 2008); *Osiris Ent., LLC v. Does 1-38*, 13 C 4901, 2013 WL 4478908, at *2 (N.D. Ill. Aug. 20, 2013) (granting expedited discovery by court order because it was reasonable to allow Plaintiff the opportunity to discover the Doe defendants' true identities prior to any Rule 26(f) conference when such identities were not otherwise known and plaintiff had no other way of identifying the defendants).

Eleven 10 seeks leave to begin discovery solely to serve subpoenas upon Amazon.com to obtain email addresses or additional contact information for the Defendants. For those Defendants that Eleven 10 has email addresses, this will confirm whether they are correct or

whether there are additional email addresses. For those that Eleven 10 lacks an email address, this may allow Eleven 10 to obtain their email addresses and provide a second means of service and increase the likelihood of success of perfecting service.

Despite Eleven 10's requests, Amazon has refused to voluntarily provide that information without a subpoena. (*See* Cavanagh Decl. ¶9.) As such, Plaintiff requests this court grant it limited expedited discovery to obtain email contact information for the defendants identified in Schedule A.

### III. Conclusion

For these reasons, Eleven 10 respectfully requests this Court's permission to serve Defendants via e-mail and electronic publication. In accordance with this request, Plaintiff has submitted a proposed order which includes a proposed provision allowing for service of pleadings filed in this action and other documents related to this action upon Defendants electronically, and providing for issuance of a single original summons in the names of each the Defendants identified on Schedule "A" attached to the Complaint in this action, which summons shall apply to all Defendants, in accordance with Federal Rule of Civil Procedure 4(b).

Dated: May 11, 2022                               Respectfully submitted,

                                                                   **ELEVEN 10**

By: /s/ Matthew J. Cavanagh
One of their attorneys

Matthew J. Cavanagh
Stephen J. Rosenfeld
Donielle F. Robinson

MCDONALD HOPKINS LLC
600 Superior Avenue, Suite 2100
Cleveland, Ohio 44144
Phone: (216)348-5730
mcavanagh@mcdonaldhopkins.com

300 North LaSalle, Suite 1400
Chicago, IL 60654
Phone: (312) 642-6103
srosenfeld@mcdonaldhopkins.com
drobinson@mcdonaldhopkins.com

*Attorneys for Eleven 10, LLC*